UNITED STATES BANKRUPTCY COURT
NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | | |
|---|---|---|
| IN RE: | : | CHAPTER 11 |
| | : | |
| CLAIRMONT PLACE CONDOMINIUM ASSOCIATION, INC., | : | CASE NO.: 21-58123 |
| | : | |
| Debtor. | : | |
| _____ | : | |

**NOTICE OF INTEREST IN CASH COLLATERAL AND
OBJECTION TO USE OF CASH COLLATERAL**

COMES NOW Paul M. McGough ("McGough") and hereby provides this (i) notice of interest in cash collateral, and (ii) objection to use of cash collateral, showing as follows:

**Background**

1. Clairmont Place Condominium Association, Inc. ("Debtor") filed its voluntary Chapter 11 petition on October 29, 2021 (the "Petition Date").

2. Debtor is a homeowners association whose members are the owners (the "Owners") of 209 condominium units located at 1800 Clairmont Lake, Decatur, Georgia (the "1800 Building"). The Owners have an undivided interest, equivalent to his or her fraction of ownership, in a building located at 2100 Clairmont Lake, Decatur, GA 30033 (the "2100 Building").

3. The first floor of the 2100 Building provides communal space and services to the Owners (the "Service Center"). The second floor houses the Montclair at Clairmont Place Personal Care Home ("Montclair"), a personal care home with 58 rooms whose residents pay to Debtor monthly fees for services, including use of the Service Center.

4. Article 7.2 of the *Amended and Restated Declaration of Condominium for Clairmont Place, a Condominium* recorded at Book 08811, Page 0024, DeKalb County

Records (the "Declaration") provides that Debtor, through its Board of Directors (the "Board"), may enter an agreement with parties to operate the Service Center. Article 7.3 of the Declaration authorizes the Board to lease all or a portion of the Service Center. The value of the right to lease 58 rooms in the Service Center alone exceeds the amount of Debtor's obligations to creditors.

5.     Article 13 of the Declaration provides that Owners are liable for assessments for, among other things, expenses of administration, common utility charges, maintenance, and other amounts determined by the Board. The Board provides a budget of expenses and assessments to the Owners, who retain the right to disapprove of the budget and any assessments at a duly called meeting.

### Management by McGough and Collateral Assignment of Leases

6.     In 2009, Debtor and Senior Association Management, LLC ("SAM") entered into a Management Agreement dated July 17, 2009 (as amended from time to time, the "Management Agreement"), pursuant to which SAM provided, among other things, management services to Debtor. McGough became the Managing Director of Clairmont. Under McGough's management, Debtor consistently exceeded its budgeted net income goals.

7.     In 2010, Debtor, McGough and SAM also entered into an agreement (as amended from time to time, the "Construction Agreement"), pursuant to which McGough and SAM agreed to construct certain additions to Montclair. These construction services ultimately increased the revenue of the Montclair by over 200%.

8.     Debtor and McGough also entered into a *Collateral Assignment of Lease or Leases and Rents* dated June 16, 2011 (as amended from time to time, the "Collateral Assignment"), pursuant to which Debtor assigned to McGough leases and rents from the Montclair. Notice of the

Collateral Assignment was recorded at Book 22525, Page 139, DeKalb County Records. The term of the original Collateral Assignment has been extended through various amendments.

9. During McGough's management, the Board regularly increased its yearly assessments to Owners to ensure, among other things, proper management and maintenance of the Service Center.

10. Disputes arose between Debtor and McGough, among others, relating to the Management Agreement, the Construction Agreement, the Collateral Assignment, and the relative obligations and duties owed. In July of 2018, Debtor, McGough, SAM and another party entered into a *Settlement Agreement and Mutual Release* (the "Settlement Agreement") pursuant to which Debtor obligated itself to pay $7,200,000 in two hundred forty (240) monthly installments of $30,000 each (the "Installments"). In the event of default, McGough could exercise his rights in and to the rents of the Montclair. The Collateral Assignment was extended through July 11, 2038.

11. Under the Settlement Agreement, McGough was to receive every six months a census of the then current occupancy of the Montclair. At the time of the Settlement, the occupancy of the Montclair was approximately 92%.

12. After the Board took over management and operations of the Montclair and Service Center, the person responsible for marketing for the Montclair was terminated without replacement.

13. Management of the Montclair and the Service Center were turned over to persons that lacked experience in management of an assisted living facility. By the end of 2019, occupancy of the Montclair had dropped to approximately 70%. On information and belief the occupancy of the Montclair is currently at approximately 51%.

**Indicia of Bad Faith**

14.     The Board has grossly mismanaged Debtor.

15.     On information and belief, the Board has not increased assessments to Owners in the last three (3) years. If the Board exercised its duties and increased assessments as needed, there would be ample income to operate the 1800 Building, the Montclair, and the Service Center, as well as pay debt servicing to McGough. Nevertheless, the Owners receive the benefits of the Service Center.

16.     On information and belief, the Board has not employed a professional manager or operator for the Montclair, has not employed a Service Center Operator, and has not sought to lease the Service Center. If any of these actions were taken there would be ample income to operate the 1800 Building, the Montclair, and the Service Center, as well as pay debt servicing to McGough.

17.     Debtor never contacted McGough prior to filing this case, despite McGough being the overwhelmingly largest creditor in the case. Debtor never apprised McGough of its financial issues in an effort to address debt relief options.

18.     Debtor has initiated an adversary proceeding seeking, among other things, a determination that (i) McGough does not have an allowed secured claim in the rents generated by the Montclair because the "revenue stream" is personalty subject to perfection by a UCC-1 financing statement, a position that is utterly without merit, (ii) the value of the rents and future rents is zero such that there is no value to which McGough's Collateral Assignment attaches, and (iii) McGough's Collateral Assignment does not attach to rents paid after the Petition Date.

19.      In effect, Debtor is using this case not to restructure but specifically to strip McGough of his (i) rights in and to the rents under the Collateral Assignment, and (ii) right to be

paid as a creditor, all while failing to take any action whatsoever to realize value from Debtor's rights in and to the Service Center or to impose a fair and appropriate assessment on the Owners. Meanwhile, the Owners and the Board retain all the benefits of the Service Center and the rents.

20. The Board has a clear conflict. It could fulfill its fiduciary duty by making appropriate assessments to cover the operational costs of the Service Center or to take action to lease the Service Center to a competent operator or employ competent management. It is the Owners and the Board that benefit from the Service Center. The Board and the Owners, however, do not want to pay fair assessments for those benefits and operate the Service Center responsibly.

21. The Board is weaponizing its mismanagement of the Montclair. The Board's incompetence has resulted in the devaluation of the rent stream of the Montclair, and the Board is now using this as an excuse to devalue McGough's rights in and to the rents so as to render him unsecured. Then, the Board will attempt to propose a plan that pays out a de minimis dividend based on monthly disposable income that is significantly less than it should be because of the Board's refusal to employ a professional operator, engage a Service Center Operator, or lease all or a portion of the Service Center.

22. This bankruptcy is not a good faith effort to reorganize. It is an abuse of the Subchapter V process to force McGough to bear all financial responsibility for the Board's mismanagement and the Board's refusal to make decisions for the benefit of anyone other than the Board and the Owners. It is a blatant misuse of the provisions of the Bankruptcy Code.

23. Accordingly, by separate motion McGough will seek appropriate relief such as dismissal of the case or removal of Debtor as debtor in possession.

**Notice of Interest in Cash Collateral**

24. Accrued rents are personalty under Georgia law. *Autrey v. Autrey*, 94 Ga. 579, 20 S.E. 431 (1894); Article 9 of the Uniform Commercial Code as enacted in Georgia specifically provides, however, that it does not apply to "the creation or transfer of an interest in or lien on real estate, including a lease or rents thereunder . . . ." O.C.G.A. § 11-9-104(h). Therefore, a U.C.C. filing concerning an assignment of rents is of no effect. Instead, notice to third parties of the rights conveyed pursuant to a security deed or separate assignment is accomplished by filing and recording these instruments in the appropriate real property records. "A duly filed and recorded deed to secure debt is notice of all the rights which the grantee has thereunder." *Cummings v. Johnson*, 218 Ga. 559, 560, 129 S.E.2d 762 (1963).

25. In this case, the Collateral Assignment, as well as various amendments, are duly recorded in the DeKalb County Records, giving notice to the world of McGough's interest in the Montclair rents.

26. "[A] security interest in rents is effective against and notice to all persons as to the existence of the interest, regardless of whether the creditor is presently entitled to receive the rents, and such right is similarly recognized pursuant to Section 552(b)." *In re Polo Club Apartments Assocs., Ltd. Partnership*, 150 B.R. 840 (Bankr. N. D. Ga. 1993)(citing *Vienna Park Properties v. United Postal Sav. Ass'n* (*In re Vienna Park Properties*), 976 F.2d 106 (2nd Cir. 1992)).

27. McGough's Collateral Assignment extends to Montclair's postpetition rents even if McGough's right to such rents is inchoate when the petition was filed. See, 11 U.S.C. §522(b)(2). "Thus, if a creditor holds a valid pre-petition security agreement which extends to rents, it will also extend to post-petition rents and constitute cash collateral regardless of any unsatisfied state perfection requirements." *In re Resort Inns, Inc.*, 2004 Bankr. LEXIS 1580 (Bankr. S. D. Ga.

2004); *In re Wrecclesham Grange. Inc.*, 211 B.R. 978, 981 (Bankr. M.D. Fla. 1997)(citing *In re Barkley 3A Investors, Ltd.*, 175 B.R. 755, 758 (Bankr. D. Kan. 1994)); *Homestead Partners v. Condor One* (*In re Homestead Partners. Ltd.*), 200 B.R. 274, 279 (Bankr. N.D. Ga. 1996).

### Objection to Use of Cash Collateral

28. Debtor has not sought authority to use cash collateral. Debtor seeks to pay allegedly critical vendors and other expenses, yet has not proposed to provide adequate for the use of cash collateral. Debtor has not provided a proposed budget. McGough objects to any use of cash collateral.

29. In order to authorize the use of cash collateral, the Court must find that Debtor has provided appropriate adequate protection of McGough's interest in the cash collateral pursuant to 11 U.S.C. §§ 363(c)(2)(B) or 363(e).

30. "Adequate protection" is relief such as cash payments, replacement liens, or "other relief . . . as will result in the realization by [McGough] as the indubitable equivalent of such entity's interest in such property." *See* 11 U.S.C. § 361(3). "[I]f a debtor seeks authorization to use cash collateral from the bankruptcy court under § 363(c)(2)(B), rather than seeking the consent of a secured creditor under § 363(c) (2)(A), the bankruptcy court 'shall prohibit or condition such use, sale, or lease as is necessary to provide adequate protection' for the secured creditor's interest as provided by 11 U.S.C. § 363(e)." *Aurelius Capital Master, Inc. v. Tousa Inc.*, Nos. 08-61317-CIV, 08-61335-CIV, 2009 WL 6453077, at *18 (S.D. Fla. Feb. 6, 2009) (quoting *In re Blackwood Associates*, L.P., 153 F.3d 61, 67 (2d Cir. 1998)).

31. Debtor has the burden of proof with respect to establishing adequate protection. 11 U.S.C. § 363(p)(1).

32. Debtor has not proposed any adequate protection to McGough to protect his interest in the cash collateral, and therefore McGough opposes any use of cash collateral.

WHEREFORE, McGough hereby provides notice of its interest in the cash collateral and objects to any use thereof.

Dated: November 8, 2021

                                                      LAMBERTH, CIFELLI,
                                                     ELLIS & NASON, P.A.
                                                    Counsel for Paul M. McGough

                                            By: */s/ G. Frank Nason, IV*
                                                  G. Frank Nason, IV
                                                  Georgia Bar No. 535160
                                                  fnason@lcenlaw.com

6000 Lake Forrest Drive, NW
Suite 435
Atlanta, Georgia 30328
(404) 262-7373

## Certificate of Service

This is to certify that I have on this day electronically filed the foregoing *NOTICE OF INTEREST IN CASH COLLATERAL AND OBJECTION TO USE OF CASH COLLATERAL* using the Bankruptcy Court's Electronic Case Filing program, which sends a notice of this document and an accompanying link to this document to the following parties who have appeared in this case under the Bankruptcy Court's Electronic Case Filing program:

> Jonathan S. Adams
> jonathan.s.adams@usdoj.gov
>
> Leon S. Jones (Sub V Trustee)
> ljones@joneswalden.com
> jwdistribution@joneswalden.com
>
> Shayna M. Steinfeld
> shayna@steinfeldlaw.com
> paralegalnotices@gmail.com

Dated: November 8, 2021

*/s/ G. Frank Nason, IV*
G. Frank Nason, IV
Georgia Bar No. 535160

6000 Lake Forrest Drive
Suite 435
Atlanta, Georgia 30328
(404) 262-7373